UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY W. DEMARS,

    Plaintiff,                  Civil Action No. 11-15394

              v.              District Judge DAVID M. LAWSON
                            Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
._____/

## REPORT AND RECOMMENDATION

    Plaintiff Timothy Demars brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Doc. #17] be DENIED and that Plaintiff's Motion for Summary Judgment [Doc. #12] be GRANTED, remanding this case for an award of benefits under § 405(g).

-1-

## **PROCEDURAL HISTORY**

On April 5, 2007, Plaintiff filed claims for DIB and SSI, alleging an onset of disability date of March 7, 2005 (Tr. 155). The claim was denied by Administrative Law Judge ("ALJ") Henry Perez, Jr. on January 29, 2008 (Tr. 165). On April 9, 2008, Plaintiff again applied for DIB and SSI, alleging disability as of January 30, 2008 (Tr. 193-202). Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on September 21, 2009 (Tr. 120). ALJ John Dodson presided. Plaintiff, represented by Lloyd Pont, testified (Tr. 123-138, 149-151), as did Vocational Expert ("VE") Pauline Pegram (Tr. 138-149). On January 20, 2010, ALJ Dodson, adopting the earlier findings of ALJ Perez, found Plaintiff not disabled (Tr. 23).

On September 22, 2010, the Appeals Council denied review of the ALJ's decision, stating that additional evidence provided to the Appeals Council after the January 20, 2010 decision did not provide a basis for reviewing the ALJ's determination (Tr. 3-6). Over one year later, on November 3, 2011, Plaintiff's September 22, 2010 request that the case be reopened was denied by the Appeals Council (Tr. 1-2). The Council found that evidence on March 18, 2011, consisting of an assessment by psychiatrist Dorit A. Ben-Ami, M.D. (who began treating Plaintiff on July, 2010) was not relevant to whether Plaintiff was disabled on or before January 20, 2010 (Tr. 1-2). However, the Council's order noted that Dr. Ben-Ami's findings had been considered in regard to a *subsequent* claim by Plaintiff for SSI (alleging disability as of January 21, 2010) which had been granted on January 19, 2011 (Tr.

-2-

1).  Plaintiff filed suit in this Court on December 8, 2011, disputing ALJ's Dodson's January

20, 2010 finding that he was not disabled as of January 20, 2010.

### BACKGROUND FACTS

Plaintiff, born July 29, 1957, was 52 when ALJ Dodson issued his decision (Tr.

23, 193).   He completed 11th grade and obtained two years of vocational training (Tr.

242).   He worked previously as a welder (Tr. 237, 242).   His April 9, 2008 application for

benefits alleges disability as a result of severe depression and anxiety (Tr. 236).

### A.     Plaintiff's September 21, 2009 Testimony Before ALJ Dodson

Plaintiff stated that he currently attended weekly psychological therapy sessions and

saw his primary physician bi-weekly for medication reviews (Tr. 123).  Plaintiff reported that

he currently took Cymbalta, Depakote, Ambien, and Klonopin for psychological conditions;

Minocycline for  rosacea; and Zantac for GERD (Tr. 123-124).   He testified that he lived by

himself in a studio apartment (Tr. 124).   He denied a current opiate addiction (Tr. 124).   He

stated that on a typical day, he would arise early, sit in a chair, watch television, and perhaps

take his dog for a walk (Tr. 124-125).   Plaintiff reported that he held a valid driver's license,

but was required to borrow a car to perform errands (Tr. 125).   He reported that he attended

church every Sunday (Tr. 125).   He denied the use of a computer (Tr. 126).

Plaintiff stated that he had no contact with his children (Tr. 126).   He testified that he

bore resentment toward his now deceased mother because he felt that she did not intervene

when he was being molested as a child by her boyfriend (Tr. 127).   He stated that  he had

repressed the memory of abuse until approximately one year ago  (Tr. 129).   He indicated

that in the past year, he experienced up to four 30-minute panic attacks every day which were characterized by heart palpitations, sweating, and nausea (Tr. 129). He stated that Cymbalta helped control his panic attacks (Tr. 130). He alleged short term memory loss (Tr. 130).

Plaintiff characterized a "good" day as one in which he could leave his apartment and walk his dog (Tr. 131). He estimated that he had two good days each week (Tr. 131). He alleged that he required the use of a cane since falling six weeks before the hearing (Tr. 136).

In response to questioning by his attorney, Plaintiff stated that he experienced suicidal ideation, adding that he sought intervention from both his pastor and current therapist (Tr. 137). Plaintiff concluded his testimony by stating that he experienced constant dizziness and drowsiness but was "used to it" (Tr. 150).

### B.    Medical and Opinion Evidence

#### 1.  Treating Records

In March, 2006, Plaintiff sought psychiatric inpatient treatment after reporting that he had not slept or eaten in the week before admittance (Tr. 282). Plaintiff reported depression and suicidal ideation upon admittance, but at the time of discharge, noted that his depression had somewhat lifted (Tr. 282-283). He was assigned a GAF of 30 on admission and 43 upon discharge[1] (Tr. 283).

---

[1]

A GAF score in the range of 21-30 is associated with "considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment OR inability to function in almost all areas. " *Diagnostic and Statistical Manual of Mental Disorders* ("*DSM-IV-TR*" ) at 34 (4th ed.2000). A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Id.*

-4-

March, 2007 treating notes state that Plaintiff requested a prescription for Vicodin (Tr. 314). In October, 2007, Plaintiff volunteered to donate a kidney but was declined due to his psychiatric history (Tr. 331-332). The same month, treating physician Thomas M. Pinson, M.D. noted ongoing anxiety, depression, and substance abuse (Tr. 289, 310).

January, 2008 treating notes by Dr. Pinson noted the presence of back pain, anxiety, and substance abuse (Tr. 286). The same month, Plaintiff was discharged from Dr. Pinson's care for "harass[ing]" staff members[2] (Tr. 284). In June, 2008, Bellaire Family Health Center treating notes by David Best, D.O.state that Plaintiff continued to experience depression and anxiety but that his substance abuse was in remission (Tr. 352-353). Treating notes state that Plaintiff attended therapy sessions regularly until he lost his home (Tr. 374). The same month, Plaintiff sought outpatient therapy for depression and a panic disorder (Tr. 360). Social worker Carole Merritt-Doherty noted that three of Plaintiff's aunts, two cousins, and his half brother had all committed suicide (Tr. 360). Plaintiff reported that he had lost most of his assets in his recent divorce (Tr. 360). He was cooperative and well-groomed with an appropriate effect (Tr. 361). He reported suicidal ideation (Tr. 362). He was diagnosed with major depressive disorder and a panic disorder (Tr. 364). Merritt-Doherty recommended individual and group therapy as well as a psychiatric evaluation (Tr. 365).

In August, 2008, Lori A. Katzman, M.D. performed a psychiatric evaluation (Tr. 366-369). Plaintiff reported that his current psychotropic medications were "somewhat

---

[2]The transcript gives no indication of how Plaintiff was "harassing" Dr. Pinson's staff members.

helpful," but that he still experienced "significant symptoms" (Tr. 366).  He reported that he stopped working in 2006 after being unable to focus on his welding assignments (Tr. 366).  He reported that he showered every other day (Tr. 367).  He indicated that he had been traumatized by his half-brother's suicide by hanging, noting that he had been the one to discovery the body (Tr. 367).  Dr. Katzman noted that Plaintiff grooming was fair to adequate (Tr. 368).  Plaintiff cried when unable to recall more than one out of three objects in five minutes (Tr. 368).  Dr. Katzman assigned Plaintiff a GAF of 48  (Tr. 368).

In October, 2008, Dr. Best, noting that Plaintiff was being treated for post-traumatic stress disorder, anxiety, depression, and opiate dependancy, requested that Plaintiff's medical leave be extended to December 16, 2008 (Tr. 393).  In December, 2008, a discharge from psychological outpatient therapy by North Country Community Mental Health assigned Plaintiff a GAF of 50 upon entry and a 56 at the time of discharge[3] (Tr. 399).

In April, 2009, psychiatrist Sarva Sarvananda, M.D. stated that Plaintiff would be unable to work for the following six weeks (Tr. 433).  In July, 2009, psychologist Wendy Hayek, working under the supervision of Dr. Sarvananda, stated that Plaintiff would be unable to work before September 1, 2009 (Tr. 432).

In August, 2009, Dr. Best composed a letter on behalf of Plaintiff's disability claim, noting that he had treated Plaintiff from June, 2008 to April, 2009 (Tr. 402).  Dr. Best stated

---

[3]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning.  *DSM-IV-TR* at 34.

that although Plaintiff had beaten a Vicodin dependence, "[h]is depression and severe anxiety did continue" (Tr. 402).  Dr. Best opined that Plaintiff's conditions "[left] him completely disabled and unable to work at any job" (Tr. 402).  The same month, Craig L. Magnatta, D.O., noting that he had treated Plaintiff since April, 2009, stated that Plaintiff was "not employed due to the chronic back pain and bipolar disorder" (Tr. 419).  He deemed Plaintiff's prognosis "fair" (Tr. 419).

Also in August, 2009, therapist Martha Adair, treating Plaintiff under the supervision of Dr. Sarvanada, completed a medical source assessment of Plaintiff's work-related activities, finding extreme limitations in all categories of functioning except for "interacting appropriately with the public" in which she found that Plaintiff's limitations were marked (Tr. 429).  In September, 2009, Adair composed a letter on Plaintiff's behalf, noting that he had been treated by Dr. Sarvanada since May, 2007 (Tr. 431).  She stated that because of Plaintiff's severe mood swings, "recurring suicidal thoughts," and molestation as a child, he was unable to work (Tr. 431).

Also in September, 2009, the Reverend David Blazek, pastor of St. Rita's Parish in Holly, Michigan composed a letter stating that Plaintiff had been "suffering to this day from the horrific abuses of the past" (Tr. 343).  Father Blazek stated that "[a]s a Catholic ordained priest who has worked with many who have suffered abuse in my years of ministry, I strongly support Timothy's cause for Social Security disability benefits" (Tr. 434).

-7-

## 2.   Non-Treating Records

In August, 2008, Wayne Hill, Ph.D. performed a non-examining Psychiatric Review Technique ("PRT") on behalf of the SSA, finding the presence of affective and substance abuse disorders (Tr. 379-392).  Under the "'B' Criteria," Dr. Hill found moderate restrictions in activities of daily living, marked difficulties in maintaining social functioning, and moderate deficiencies in concentration, persistence, and pace (Tr.389).   He found the presence of "one or two" episodes of decompensation (Tr. 389).  Dr. Hill found that Plaintiff was able to concentrate for short periods (Tr. 391).  In October, 2008, Dr. Hill completed a Mental Residual Functional Capacity Assessment, finding moderate limitations in the ability to understand and remember detailed instructions; concentrate for extended periods, and perform activities within a schedule (Tr. 396).  Dr. Hill found "no significant change" in Plaintiff's condition since ALJ Perez's January 29, 2008 decision (Tr. 397).

## 3.  Material Submitted Subsequent to the ALJ Dodson's January 20, 2010 Opinion

In May, 2009, Adair completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff experienced marked limitations in understanding and memory (Tr. 442-443).  In December, 2009, Adair submitted a psychiatric examination report to the State of Michigan stating that Plaintiff currently had a GAF of 40 (Tr. 438).

In December 20, 2009, David L. Hayter Ph.D conducted a consultive examination on behalf of the State of Michigan Family Independence Agency ("FIA")(Tr. 444-448).  Plaintiff reported that he was independent in self care activities but slept fitfully due to resentment toward his mother and flashbacks of being molested (Tr. 446).  Plaintiff was

-8-

cooperative, with a "blunted and tearful" affect (Tr. 446). Plaintiff was able to interact appropriately but demonstrated deficiencies in sustained attention and concentrational abilities (Tr. 448). Hayter assigned Plaintiff a GAF of 45 (Tr. 448). In March, 2010, Adair composed additional disability opinions on Plaintiff's behalf (Tr. 436-437).

In March, 2011, psychiatrist Dorit A. Ben-Ami, M.D. summarized Plaintiff's social and psychological treating history, noting that in August, 2008, memories of childhood traumas were triggered by the betrayal of his wife and subsequent divorce. *Plaintiff's Exhibit A-15, Docket #12-1.* Dr Ben-Ami opined that Plaintiff psychological problems rendered him permanently disabled. *Id.* at A-16. She found that Plaintiff's prognosis was poor. *Id.* at A-17. In an accompanying Mental Residual Functional Capacity Assessment, Dr. Ben-Ami found that Plaintiff experienced marked limitations in concentration, social functioning, and adaptation. *Id.* at A-19-20. She found the presence of organic mental disorders, a panic disorder, severe depression, and anxiety. *Id.* at A-21-23, 25. She found that Plaintiff experienced extreme limitations in activities of daily living, social functioning, and concentration, persistence, and pace. *Id.* at A-30.

### C. Vocational Expert Testimony

The ALJ posed a hypothetical question to VE Pauline Pegram, taking into account Plaintiff's age, education, and work experience:

Capable of a full range of medium [exertional work].[4]  Limited to unskilled work, with only occasional contact with the public, and only occasional interaction with coworkers and/or supervisors.  Also, this person would have to avoid concentrated exposure to hazards such as heights and machinery.  Would such a person be able to perform Mr. Demar's prior relevant work? (Tr. 141).

The VE responded that the limitations to exertionally medium and unskilled work would preclude Plaintiff's past relevant work as a welder, which was classified as exertionally heavy and skilled (Tr. 141).  She found however that the limitations would allow the individual to work as a janitor/cleaner or yard worker, finding approximately 50,000 such jobs in the southeast Michigan area (Tr. 141).

In response to questioning by Plaintiff's attorney, the VE stated that "an individual who is frequently off task . . . due to invasive thoughts of past sexual abuse" would be unable to perform any of the above-cited jobs (Tr. 143).  She testified that being off task occasionally (one third of the workday) would also preclude those jobs, noting that 90 percent productivity was "expected in tasks such as these" (Tr. 143).  She stated that an individual limited to "one or two step tasks" would be able to perform a range of

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

janitor/cleaner and yard worker jobs, but stated that certain cleaning jobs could require a "multiple step process" (Tr. 144). The VE stated that the need to take unscheduled breaks each day for panic attacks would preclude all work (Tr. 144-145). She testified that if Plaintiff's testimony of disruptive psychological symptoms were fully credited, he would be unable to perform any work (Tr. 146-147).

The VE concluded her testimony by stating that her testimony regarding janitorial jobs was not consistent with the Dictionary of Occupational Titles ("DOT"), noting that the position of janitor in the DOT was listed as a semiskilled job (Tr. 148). She stated that her testimony regarding unskilled janitor positions was based on her own professional experience (Tr. 148).

### D. ALJ Dodson's January 20, 2010 Opinion

Citing *Drummond v. Commissioner,* 126 F.3d 387 (6th Cir. 1997), the ALJ noted that he was required to adopt ALJ Perez's January 29, 2008 RFC "unless there is new and material evidence relating to such a finding or there has been a change in Law, Regulations, or Rulings affecting the finding or the method for arriving at the finding" (Tr. 14). Next, the ALJ (deviating slightly from ALJ Perez's Step Two findings) found the severe impairments of "panic disorder, major depressive disorder, and post-traumatic stress disorder," but that none of the impairments met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1[5] (Tr. 16). Acknowledging the earlier opinion, he found moderate limitations

---

[5]ALJ Perez found the severe impairments of "major depressive disorder, generalized anxiety disorder, mild L4-S1 degenerative disc disease and L3-4 nerve root

in activities of daily living and social functioning, and "moderate to marked" impairments of concentration, persistence, and pace (Tr. 17).  He also adopted ALJ Perez's residual functional capacity ("RFC"), stating that Plaintiff could perform medium work with the following limitations[6] :

> [P]erform postural activities frequently; perform any manipulative functions; see, hear, and speak without limitations; and perform work in any environment, except he must avoid concentrated exposure to hazards such as heights and machinery.  Mentally, the claimant can generally perform the tasks of unskilled work, as he can understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting.  The claimant can also have only occasional contact with the public and occasional interaction with co-workers and supervisors (Tr. 18).

Citing the VE's job findings, the ALJ found that Plaintiff could work as a janitor/cleaner and yard worker (Tr. 22).

ALJ Dodson acknowledged the presence of "a substantial amount of additional medical evidence" since the last decision but found that the updated evidence "fail[ed] to support deviation" from the previous RFC (Tr. 19).  The ALJ noted multiple disability opinions by treating sources but found that they were "were quite conclusory and inconsistent with the objective medical evidence" (Tr. 19).  He also stated that he considered

---

irritation"(Tr. 158) but did not find the presence of post-traumatic stress disorder.

[6]While ALJ Perez found that contact with the public must be kept to a minimum, ALJ Dodson found that Plaintiff could interact occasionally with the public (Tr. 18, 150). However, ALJ Dodson limited Plaintiff's interaction with coworkers to occasional - a limitation not found in the earlier RFC (Tr. 18).

the reports of Plaintiff's brother and pastor, but gave them little weight because they were not qualified to make a disability finding and "[i]t is also quite possible that [they] sympathize with the claimant, and may make statements that they believe would increase the likelihood of the claimant obtaining benefits based on the claimant's representations as to his condition" (Tr. 20). The ALJ found Plaintiff's admission that he attended weekly therapy, went to church, walked his dog, and watched television "inconsistent" with allegations of disability level impairments (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of

-13-

whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  Sentence Six Material

Plaintiff, noting that he personally submitted additional documents to the Appeals Council on September 2, 2010, argues that the Council's loss of the documents  amounts to

a denial of due process. *Plaintiff's Brief* at 7-13, *Docket #12.* He contends that the loss of

these records deprives this Court of the ability to determine whether he is entitled to a

remand pursuant to the sixth sentence of 42 U.S.C. § 405(g).[7] *Id.* He points out, in effect,

that if the material had not been lost, it is possible that the Appeals Council would have

remanded the case to the ALJ or at least, made the newer material part of the original record,

allowing this Court to have review the records for remand under the fourth sentence of

---

[7]

     Under 42 U.S.C. §405(g), a "sentence six" remand (in which the district court retains jurisdiction) "does not attach to any substantive ruling but merely remands the matter for further review in light of newly discovered evidence which is to be considered by the administrative law judge and therefore does not constitute a 'judgment' from which appeal can be taken." *Melkonyan v. Sullivan,* 501 U.S. 89, 97-99, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). The reviewing court does not grant summary judgment, but merely remands for further review. *Id.* The court "may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g)." *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). However, the court retains jurisdiction in a Sentence Six remand, and enters final judgment only "after post-remand agency proceedings have been completed and their results filed with the court." *Shalala v. Schaefer*, 509 U.S. 292, 297, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); *see also Melkonyan*, 501 U.S. at 98.

     In contrast, the fourth sentence of 42 U.S.C. § 405(g) provides that "[t]he Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *See Shalala v. Schaefer*, 509 S.Ct. 292, 303, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (a sentence four remand, allowing the court to remand for further hearing or an award of benefits, requires entry of judgment); *Melkonyan v. Sullivan,* 501 U.S. 89, 101-02, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (a final judgment must accompany a sentence four remand order); *Berkowski v. Commissioner of Social Sec.*, 652 F.Supp.2d 846, 849 (E.D.Mich.,2009) ("the remand must be made post-judgment pursuant to sentence four of 42 U.S.C. § 405(g)"); *Siuta v. Commissioner of Social Sec.*, 2009 WL 275732, *1 (E.D.Mich. 2009) ("A judgment must be entered immediately with a sentence four remand and the district court does not retain jurisdiction during the administrative proceedings on remand")(citing *Melkonyan, supra*).

§405(g).  *Id.*  Plaintiff also contends that after mislaying the September 2, 2010 records, the Appeals Council's compounded its original mistake by its mistreatment of opinion evidence by Dr. Ben-Ami, submitted by his current attorney on March 18, 2011  *Plaintiff's Brief* at 9-10, Exhibit A-8, 16-30.   Plaintiff notes that instead of making these records part of the present transcript, the Council flouted its own rules by refusing to append or even consider Dr. Ben-Ami's records, but instead, noted that they had been made part of a subsequent application for SSI by Plaintiff in which he had been found disabled.  *Id.* at 10-11, Exhibit A-34.  In a March 31, 2011 letter to Plaintiff, the Council stated that because Dr. Ben-Ami did not begin treatment until approximately six months after ALJ Dodson's January 20, 2010 decision, her disability opinion that Plaintiff was disabled before the last date insured ("DLII") for DIB benefits of September 30, 2008 was "not . . . persuasive" and therefore was not added to the transcript.  Exhibit A-34.

In response, Defendant concedes that the Council mislaid the records received on September 2, 2010, but argues that any error is harmless, given that "Plaintiff admits that he does not "[know] what was submitted, let alone whether those materials fit the criteria for a sentence six remand."  *Defendant's Brief* at 6*, Docket #17* (citing *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 654 (6th Cir. 2009).  Defendant contends that neither the records submitted post-decision which are attached to the transcript (Tr. 435-450) nor Dr. Ben-Ami's evidence (submitted with Plaintiff's motion for summary judgment, Exhibit A-16-30) provide grounds for a sentence six remand.  *Id.* at 8-14.   Defendant contends that most of

the material was created after ALJ Dodson's January 20, 2010 decision, making it irrelevant to the present case. *Id.*

Material submitted subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding* ..." (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

In this case, the sentence six material can be divided into three groups: (1) The records submitted by Plaintiff on September 2, 2010 which were mislaid by the Appeals Council, (2) evidence submitted by Plaintiff's former counsel sometime prior to the September 22, 2010 denial of review which was made part of the transcript (Tr. 436-450) and, (3) Dr. Ben-Ami's records, submitted on March 18, 2011 by Plaintiff's current counsel.

As to the first group, Defendant acknowledges that they were misplaced by the Council. However, Plaintiff did not retain copies of these records and cannot remember what they contained or if they supported his claim for DIB. Although Council is at fault for

-17-

losing the records, Plaintiff's failure to allege that they were material to his claim defeats any argument for remand on this basis.

For differing reasons, the third group, consisting of Dr. Ben-Ami's opinion evidence stating that Plaintiff was disabled as of August, 2008 does not provide grounds for a sentence six remand.  This material, while compelling, is essentially cumulative of earlier records stating that Plaintiff experienced disability level psychological limitations. *Allen v. Commissioner of Social Sec.,* 561 F.3d 646, 654 (6th Cir. 2009)(cumulative records do not satisfy the materiality requirement for remand); *see also Borman v. Heckler,* 706 F.2d 564, 568 (6th Cir.1983)(same).  The possible relevance of Dr. Ben-Ami's opinion is further undermined by the fact that she did not start treating Plaintiff until six month after the administrative hearing (Tr. 1).  Her statement that Plaintiff was disabled from all work at least as early as August, 2008 was not based on her own findings, but those of treating sources from that period whose records are found in the transcript. *Plaintiff's Exhibit* A-16.

In contrast, the second sentence six category, consisting records added to the administrative transcript, contains material that is both new and material to the January 20, 2010 decision (Tr. 436-450).  The December, 2009 consultive examination, by itself, is relevant and timely.  As discussed above, Dr. Hayter, assigning Plaintiff a GAF of 45, found an impaired ability to sustain concentration  (Tr.  447-448).  His observation that Plaintiff cried during the examination, and had a depressed affect and concentrational problems

-18-

supports the findings of treating sources and Plaintiff's claim that he became easily distressed (Tr. 446-447).

Further, Dr. Hayer's non-treating observations stand at odds with the ALJ's finding that the treating source disability opinions were unsupported by clinical findings (Tr. 19). While Dr. Hayter, in part, found less severe impairment than treating sources, they overlap significantly with the treating source opinions that were rejected by the ALJ. Moreover, these records, submitted by Plaintiff's counsel on March 26, 2010, have a fax transmission date of March 4, 2010 to a fax number corresponding to Plaintiff's home address (Tr. 444). Because it is likely that neither Plaintiff nor his former attorney had access to Dr. Hayter's report prior to the January 20, 2010 decision, it appears that good cause exists for the tardy submission. While Dr. Hayter's observations postdate Plaintiff's DLI by approximately 15 months, the consultive report, referencing a long history of psychiatric problems has potential materiality.[8]

Thus, Plaintiff is at a minimum entitled to a Sentence Six remand. However, as explained in the following sections, the record before the ALJ, without regard to the later-submitted material, in itself supports a remand for benefits.

---

[8] However, a December, 2009 assessment (Tr. 439-443) and March, 2010 opinion evidence (Tr. 435-436) by Adair do not provide grounds for a sentence six remand. The December, 2009 assessment, stating that Plaintiff is disabled by psychological conditions, duplicates her earlier findings (Tr. 429). Likewise, her March, 2010 opinion essentially restates her September, 2009 opinion that Plaintiff experienced long-term disability (Tr. 431).

### B.  Arguments for a Step Four Remand

Plaintiff argues that the hypothetical question posed to the VE did not account for his full degree of psychological limitation.  *Plaintiff's Brief* at 15-17.   Citing *Ealy v. CSS,* 594 F.3d 504, 516 (6th Cir. 2009), he contends that the hypothetical qualifier of "unskilled work" did not reflect ALJ's own finding of "moderate to marked" deficiencies in concentration, persistence and pace ("CPP").  *Plaintiff's Brief* at 16 (citing Tr. 17, 141).  Plaintiff also contends that the RFC found in the administrative opinion, mirroring the limitations stated in the hypothetical question, was not supported by substantial evidence.  *Id.* (citing Tr. 18).

Moderate deficiencies in CPP represent substantial limitations which must be acknowledged in the hypothetical question.  *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005)(Friedman, J.); 20 CFR § 416.920a (3)(4)(moderate CPP deficiencies [as opposed to *mild* deficiencies] denote some level of work related limitation).  The failure to account for moderate deficiencies in concentration, persistence and pace in the hypothetical question constitutes reversible error. *Edwards.*   There is some divergence of opinion in this district and elsewhere as to what modifiers sufficiently account for moderate deficiencies in CPP.  *Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D.Mich. August 30, 2011)("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, *7 (E.D.Mich. June 16, 2008)).  However, "unskilled work," or "simple work" are generally insufficient to account for moderate deficiencies in CPP.

*Edwards* ; *Ealy v. Commissioner,* 594 F.3d 504, 516 (6th Cir.2010)("simple repetitive" not sufficient); *Sutherlin v. Commissioner of Social Sec.,* 2011 WL 500212, *3 (E.D.Mich.2011)(limitation of "one to two step tasks" adequately addresses moderate limitations in CPP).

Here, the qualifier "unskilled work," standing alone, is particularly inadequate given that the ALJ did not simply find "moderate" concentrational deficiencies, but instead, "moderate to marked" ones (Tr. 17, 51, 141). A marked limitation is defined as one which "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The fact that the markedly impaired individual may be able to perform "many simple tasks" does not imply that he can "complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions." *Id.* The fact that the modifier "unskilled work" is inadequate to account for Plaintiff's concentrational deficiencies is illustrated by the VE's acknowledgment that the additional limitation of "one or two step tasks" (a modifier overwhelmingly supported by the record evidence) would have eroded the job numbers she testified to in response to the ALJ's hypothetical question (Tr. 141, 144). *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 ( E.D. Mich. 2003)(Roberts, J.)(job

findings made in response to   incomplete set of limitations not substantial evidence).

Because the ALJ has not met his burden at Step Five, a remand is warranted.  *Id.*

### C.  New and Material Evidence Postdating the Original Decision

I am mindful that ALJ performed his analysis pursuant to *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997),  which states that in the absence of new and material evidence postdating an earlier decision under the same Title, the latter fact finder must adopt the previous RFC.  AR 98-4, codifying *Drummond,* provides as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in law, regulations, or rulings affecting the finding or method for arriving at the finding.

AR 98-4(6).  In order to be awarded benefits for her condition subsequent to the original finding of non-disability, a claimant "must demonstrate that her condition has so worsened . . . that she was unable to perform substantial gainful activity." *Priest v. Social Security Admin*, 3 Fed.Appx. 275, 276, 2001 WL 92121, 1 (6th Cir. 2001)(citing *Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1232-33 (6th Cir.1993)).

While ALJ Dodson was correct in applying the *Drummond* analysis, his conclusion that new and material evidence of disability postdating the original decision did not exist is not supported by substantial evidence.  First, almost all of Plaintiff's psychological treating

-22-

sources reported observing disability level symptoms.  While Dr. Katzman did not expressly state that Plaintiff was disabled, she found that Plaintiff was tearful and experienced concentrational  problems, and otherwise serious symptoms of psychological limitation (Tr. 368).

Dr. Best, a long-term provider, found that Plaintiff's psychological problems rendered him unable to perform any job (Tr. 402).  Adair, treating Plaintiff on a regular basis under the supervision of Dr. Sarvanada, found him unable to work (Tr. 429, 431).   Likewise, Dr. Magnatta noted "was not employed due to chronic back pain and bipolar disorder," giving him a "fair" prognosis[9] (Tr. 419).   However, the ALJ, without naming any of the above treating sources, rejected all of the them in one paragraph on the basis that (1) they were swayed by Plaintiff's subjective complaints (2) their findings were not supported by treating notes, and (3) some of them did not understand the definition of "disability" under the Social Security Act (Tr. 19).  However, the ALJ's reasons for according "little weight" to all of the treating opinions stands at odds with  dozens of pages of intake and treating notes by long-term treating sources, at least two of whom state repeatedly the Plaintiff's symptoms preclude *all* work (Tr. 252-253, 360-362, 368, 393, 399, 432-433, 429, 402, 431).

The ALJ also rejected a letter written by Plaintiff's parish priest on the basis that the priest did not possess the qualifications to make a disability opinion (Tr. 20).   The ALJ rejected the opinion on the basis that "it is quite possible" that the priest wrote the letter out

---

[9]Admittedly, Dr. Magnatta did not begin treating Plaintiff until after the DLI of September 30, 2008.

of sympathy and a misguided belief in Plaintiff's allegations of limitation (Tr. 20).  Pursuant to 20 C.F.R. § 404.1513(d)(4), the ALJ may consider evidence from non-medical sources such as neighbors and clergy members "to show the severity of . . . impairments."  While generally, the ALJ is entitled to determine what weight to give to "other source," evidence, "[p]erceptible weight must be given to lay testimony where, as here, it is fully supported by the reports of the treating physicians." *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  Here, the priest's finding that Plaintiff was disabled was supported by the opinions of several treating sources and was thus entitled to "perceptible weight."   The priest's statement that he had counseled  Plaintiff and "many others who had experienced similar abuse" makes this "lay person" opinion particularly relevant to the disability claim  (Tr. 434).

Further, the ALJ's generalized reasons for discounting Plaintiff's claims are weak. The ALJ noted that Plaintiff admitted that he walked his dog, ignoring testimony that he was able walk his dog only on his two "good days" per week (Tr. 20, 131).  The observation that Plaintiff was capable of watching a lot of television, by any standard, does not provide evidence that he was capable of gainful activity (Tr. 124-125).  The ALJ also discounted "allegations" of the side effects of dizziness and drowsiness which were not supported by the treating records (Tr. 20).  However, Plaintiff actually testified that he was "used to" the side effects of dizziness and drowsiness, stating, in effect, that they did not create functional limitations (Tr. 150).  The ALJ minimized the fact that Plaintiff experienced a panic attack

during the course of the administrative hearing which forced him to leave the courtroom to vomit, making a wholly unsupported conclusion that the RFC allowing for less "social interaction" would prevent Plaintiff's symptomology from interfering with work  (Tr. 21).

ALJ Dodson's finding that "new and material" evidence did not support changing ALJ Perez's earlier determination is also flawed.  While ALJ Perez found that psychological treating records were sparse (Tr. 162), the present record shows that Plaintiff sought and received regular psychological treatment. ALJ Perez discounted Dr. Sarvananda's opinion on the basis of a "limited treating relationship" whereas here, the records show that Plaintiff received long-term treatment from individuals under Dr. Sarvananda's care.  In contrast to ALJ Perez's finding that Plaintiff's claims of panic attacks were unsubstantiated,  Plaintiff actually experienced a panic attack during the course of the administrative hearing in front of ALJ Dodson (Tr. 62).  Dr. Hill's October, 2008 non-examining finding that no "new and material evidence" existed was stale, having been made well before much of the opinion evidence for this application was created and submitted (Tr. 393, 402, 419, 431).

Because substantial evidence does not support ALJ Dodson's conclusion that the recent records contained "new and material" evidence of disability, a sentence four remand is appropriate.  Further, because grounds exist for remand under both the fourth and sixth sentence of § 405(g), the Court may remand under sentence four with instructions to consider the newer material.  *See Faucher v. Secretary of Health and Human Services*, 17 F.3d 171

(6th Cir. 1994)(taking of additional evidence permitted in a sentence four remand); *Huber v. Comm'r of Soc. Sec.,* 2009 WL 111738 at * 11 (E.D. Mich. Jan.15, 2009)(same).

However, the question of whether consideration of the sentence six material is appropriate is obviated by the fact that the evidence that was before the ALJ strongly points to a finding of disability.  *Faucher, supra,* and *Newkirk v. Shalala,* 25 F.3d 316, 318 (6th Cir.1994), hold that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.*  This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Faucher,* 17 F.3d at 176 (citing *Mowery v. Heckler,* 771 F.2d rectification, 973 (6th Cir.1985)).  Here, the inadequate hypothetical question (an error that could admittedly be cured by a remand for further fact-finding) is coupled with an RFC which is completely unsupported by any treating source opinion.   The "reasons" provided for discounting Plaintiff's allegations and the lay evidence, as discussed above, amount to a distortion of the record.   In reading the transcript from front to back, I do not find more than a scintilla of evidence to support the finding that Plaintiff is not disabled.   Because the case for disability is "overwhelming" I recommend a remand for an award of benefits, retroactive to January 3, 2008.[10]  *Faucher,* at 176.

---

[10] The fact that Plaintiff has since applied for SSI and was found disabled by a third ALJ is not relevant to this case and plays no part in the recommendation to remand this case for an award of benefits.  However, I note that my finding that Plaintiff became disabled prior to

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Doc. #17] be DENIED and  that Plaintiff's Motion for Summary Judgment [Doc. #12] be GRANTED, remanding this case for an award of benefits under the fourth sentence of 42 U.S.C § 405(g), retroactive to January 30, 2008.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response

---

his date last insured ("DLI") for DIB of September 30, 2008 would entitle him to benefits based on his prior earnings.  Retroactive DIB would presumably be offset by any SSI payments he has received.

shall address specifically, and in the same order raised, each issue contained within the

objections.

<div style="margin-left: 40%;">
s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE
</div>

Date: February 4, 2013

---

**CERTIFICATE OF SERVICE**

  I hereby certify on February 4, 2013, I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on February 4, 2013: **None**

<div style="margin-left: 40%;">
s/Terri L. Hackman
Secretary to
Magistrate Judge R. Steven Whalen

(313) 234-5115
</div>

-

-28-